UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GREG MELFI, plaintiff :
:
vs. : CA. NO 04-80S
:
MANSOLILLO, MASOLILLO :
& MELFI, DDS, defendants :

**DEFENDANTS JOSEPH MANSOLILLO AND ARTHUR MANSOLILLO'S MOTION FOR SUMMARY JUDGMENT**

Now come the defendants, Joseph Mansolillo and Arthur Mansolillo, requesting this Court grant summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure.

In support of this motion defendants rely on the attached memorandum of law and statement of undisputed facts, pursuant to Local Rule 12.1.

Defendant, by His Attorneys,
HIGGINS, CAVANAGH & COONEY, LLP

By Gerald C. DeMaria
Gerald C. DeMaria, #0637
123 Dyer Street
Providence, RI 02903
(401) 272-3500

CERTIFICATION

I hereby certify that a copy of the foregoing documents has been furnished by mail, this 19th day of September 2005 to: Francis A. Connor, III and Lawrence T. Gingrow, III at TAYLOR, DUANE, BARTON & GILMAN, LLP, 10 Dorrance Street, Suite 700, Providence, RI 02903 and by regular mail to Everett Petronio, Jr., Esq., Law Offices of Everett A. Petronio, Inc., 1239 Hartford Ave, P.O. box 19040, Johnston, RI 02919-0001

Susan Newman

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GREG MELFI, plaintiff | : | |
| | : | |
| vs. | : | CA. NO 04-80S |
| | : | |
| MANSOLILLO, MASOLILLO & MELFI, DDS, defendants | : | |

**DEFENDANTS JOSEPH MANSOLILLO AND ARTHUR MANSOLILLO'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Defendants Joseph Mansolillo ("Dr. J. Mansolillo") and Arthur Mansolillo ("Dr. A. Mansolillo") submit this motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff Gregg. Melfi ( "Dr. Melfi") filed three actions in the Superior Court of Rhode Island. In one action ("Dental Practice Action") Dr. Melfi originally sought to dissolve and wind up the business affairs of the partnership Dr. Melfi entered into with both Dr. J. Mansolillo and Dr. A. Mansolillo for the purpose of practicing dentistry ("the Dental Practice Partnership"). Although none of the parties ever signed a written partnership agreement all parties did operate as a general partnership in accordance with many of the provisions of a draft of an unsigned written agreement. Dr. Melfi also seeks an order from the Court "compelling the Defendants to account to him for all equity in, profits from, and monies received, disbursed and retained by the Dental Practice Partnership."[1] *(Complaint, C.A. No. 04-81S, Demand Section (hereinafter "Dental Practice*

[1] A third action was filed in Rhode Island Superior Court, in which Dr. Melfi sought accounting for a general partnership he entered into with the Dr. J. Mansolillo that owned an X-Ray machine. That suit was not removed to this Court for lack of the jurisdictional amount.

*Complaint)(attached as Exhibit A)).*

The second action arises from a partnership Dr. Melfi entered into with Dr. J. Mansolillo for the purpose of owning the real estate in which the Dental Practice Partnership operated ("Real Estate Action"). In this second action Dr. Melfi seeks an order from the Court "compelling the Defendant to account to the Plaintiff for all equity in, profits from and monies received, disbursed and retained by [A&J Realty] Partnership" ("the Realty Partnership"). *(Complaint, C.A. No. 04-80S, Demand Section (hereinafter "Real Estate Complaint")(attached as Exhibit B)).* No written partnership agreement was ever signed. Dr. Melfi abandoned the Dental Practice Partnership and claims that since that time Dr. J. Mansolillo has been in complete control of the "assets, books and records" for the Realty Partnership. (*Id. at* ¶ *9*)

After removal of the Dental Practice Action and Real Estate Action to this Court the two actions were consolidated.

Pursuant to the applicable provisions of the Rhode Island Uniform Partnership Act, R.I.G.L. §7-12-1 et. seq., Dr. Melfi is only entitled to the return of his capital account in the Dental Practice Partnership. The financial books and records of the Dental Practice Partnership reveal that, at the time of his voluntary departure, Dr. Melfi's capital account was negative $21, 248.00, leaving no funds to be distributed to Dr. Melfi. Consequently, there is no basis to Dr. Melfi's claim for $200,000, or any other amount. A departing partner may not recover a portion of a deficit. Under the Rhode Island Uniform Partnership Act, neither the then partnership, nor the remaining partners, have any duty to pay Dr. Melfi any sum of money based on any going concern value of the partnership. As such, the defendants are entitled to summary judgment.

Additionally, the Real Estate Complaint does not state a claim for relief which may be

granted. In the Real Estate Complaint Dr. Melfi simply requests that Dr. J. Mansolillo account to Dr. Melfi all the profits and losses of the Realty Partnership. Before and during the course of these proceedings Dr. Melfi was specifically given the opportunity to inspect and copy documents responsive to his Request for Production of Documents. Dr. Melfi, up to this point in time, has not done so. As, Dr. Melfi did not seek relief which may be granted by the court and has had the opportunity to inspect the records of the Realty Partnership, Dr. J. Mansolillo is entitled to summary judgment at this time.

## II. FACTS

Dr. Melfi began working with both Drs. A. and J. Mansolillo in August 1985 after graduating from dental school. (*Deposition Transcript of Gregg R. Melfi, DDS (hereinafter "Melfi Tr."), dated June 27, 2005, at p. 26, (attached as Exhibit C)*). In early 1989 Dr. Melfi was asked to join the Dental Practice Partnership. (*Melfi Tr.* at p. 26). Dr. Melfi testified in his deposition, that in 1989 Dr. A. Mansolillo proposed that Dr. Melfi buy in to the dental practice by purchasing a one-third share of the dental practice over a period of time. (*Id.* at p. 27). According to Dr. Melfi, Dr. A. Mansolillo had valued the practice at $600,000 and therefore, a one-third share was worth $200,000. (*Id.* at p. 27-28).

Notwithstanding the allegation in the Dental Practice Complaint that he paid $200,000 to join the Dental Practice Partnership, Dr. Melfi never made any payments to the partnership. He admitted at his deposition that he never made any payments to the Dental Practice Partnership and could not explain the allegation in the Dental Practice Complaint to the contrary. (*Melfi Tr.* at p. 34-35); (*Dental Practice Complaint* ¶ *9*). In fact, the financial books and records of the Dental Practice Partnership reveal that Dr. Melfi never made any such payments. He never wrote a single check or

series of checks $200,000 to buy into the Dental Practice Partnership, as is the normal course of action for a person joining an existing partnership. (*Id.* at p. 34). Rather, Dr. Melfi's initial capital account was established as $20,000 on the financial books and records of the Dental Practice Partnership through an internal bookkeeping entry and not through any payment made by Dr. Melfi. (*Id.* at p. 29).

Dr. Melfi now explains that he was to "pay" $200,000 by agreeing to a yearly salary that was less than Dr. A. and Dr. J. Mansolillo's salaries. (*Id.* at p. 29). This salary reduction agreement, according to Dr. Melfi, began in July 1988 and was to continue for 10 years. (*Id.* at p. 29). Dr. Melfi testified that each year he agreed to a guaranteed salary that was less than the guaranteed salaries Dr. A. and Dr. J. Mansolillo earned. (*Id.* at p. 57). This guaranteed salary arrangement among the parties was agreed to each year and was recorded in the financial records of the Dental Practice Partnership on a yearly basis. (*Id.* at p57). Dr. Melfi stated that he saw these certified public accountant prepared financial records each year and never questioned the contents. (*Id.* at p. 57). It is undisputed by the parties that after the guaranteed salaries were deducted, each of the partners shared in the net profits of the partnership on a pro-rata one-third basis. This practice of guaranteed salary continued for a number of years.

Effective January 1,1992 Dr. Melfi was reported as a full partner in the Dental Practice Partnership. (*Id.* at p. 67); *(Mansolillo, Mansolillo & Melfi, DDS Financial Statements Years Ended December 31, 1992 and 1991 p. 5 (hereinafter "1992, 1991 Financial Statements") (attached as Exhibit D).* The financial statement revealed that Dr. Melfi's original capital account was set at $20,000.00 for his share of the assets of the business. Each year the financial statements revealed the guaranteed salaries of the partners and showed the discrepancy in the salary arrangement between

the founding partners and the new partner.

The Dental Practice Partnership became known as Mansolillo, Mansolillo, & Melfi, DDS. (*Melfi Tr.* at p.43). Dr. Melfi testified that during the years he was a partner he earned a guaranteed salary which was $130,000 less than what Dr. A. and Dr. J. Mansolillo were paid as a salary. (*Id.* at p. 92). In addition, he alleged in his deposition that Dr. A. and Dr. J. Mansolillo each received $35,000 in partnership assets that Dr. Melfi did not receive during this time. (*Id.* at p. 92). Dr. Melfi therefore is requesting that he receive $200,000 to compensate him. *(Dental Practice Complaint, Demand Section).* However, it is undisputed that Dr. Melfi never paid any money to the partnership or the defendants. (*Id.* at p. 91). Rather, Dr. Melfi appears to argue that even though he agreed to take a reduced salary on a yearly basis he is now entitled to recoup the cumulative difference in his salary and his partners' salary.

Although there was a written partnership agreement prepared it was never signed. *(Articles of Partnership (attached as Exhibit E).* The agreement revealed the two tiered guaranteed salary structure. (*Id.*) Pursuant to this agreement, the parties agreed each would devote their full time and energy to the practice of dentistry for the benefit of the Dental Practice. (*Id.*) Indeed, Dr. Melfi testified that as a partner he was obligated to devote his full time and energy to the Dental Practice Partnership notwithstanding the absence of a written agreement. (*Melfi Tr.* at p. 61).

However, Dr. Melfi testified in his deposition that as early as the year 2000 he had thought about acquiring a dental practice in Massachusetts. (*Id.* at p. 80). Rather than move, he attempted to solidify his relationship with the Dental Practice Partnership. In the middle of 2000 he inquired about becoming a partner in the Realty Partnership. (*Melfi Tr.* at p. 4). After his inquiry, it was agreed that he would become a partner in the Realty Partnership and that Dr. A. Mansolillo would

be bought out of the partnership. (*Id.*). Dr. Melfi became a partner in the Realty Partnership on December 4, 2000. (*Id.* at p. 5).

In January of 2002, notwithstanding his obligation and promise to devote all his time and energy to the Dental Practice Partnership Dr. Melfi informed both Dr. A. and Dr. J. Mansolillo that he intended to leave and set up a new practice in Massachusetts. (*Id.* at p. 76). Dr. Melfi did abandon the Dental Practice Partnership in March of 2002 after purchasing a dental practice in Milton, Massachusetts and taking certain of the Dental Practice Partnership patients with him. (*Dental Practice Complaint ¶ 13)*; (*Melfi Tr.* at p. 88). On or about the time of his departure, Dr. Melfi informed each of the defendants that they should purchase his percentage interest in the Dental Practice Partnership. (*Melfi Tr.* at p . 89). Dr. Melfi demanded $200,000.00, the amount that he claims he paid for his partnership interest. (Id. at 89). Following Dr. Melfi's decision to wrongfully withdraw from the Dental Practice Partnership in violation of his agreement with his partners, the defendants exercised their right to carry on the business in their own names.

According to the books and records of the Dental Practice Partnership , it is undisputed that Dr. Melfi's capital account as December 31,2000 was negative $18,610.00. *(Financial Statements dated December 31, 2002 (hereinafter "2002 Financial Statements") (attached as Exhibit F) at p. 11).* Financial records indicate that in the calendar year 2001, that Dr. Melfi's earnings in the partnership were $76,186, of which $77,759 were withdrawn by him. (*Id.*). The $1573 overdraw added to the already existing $18,610 deficit results in a negative balance in Dr. Melfi's capital account of $20,183, as of December 31, 2001. (*Id.*). Finally, the partnership records indicate that the plaintiff's share of the earnings of the partnership, through the date that he withdrew from the partnership, was $19,844. (*Id.*). For that same period of time, the plaintiff withdrew $20,909 - this

$1065 overdraft results in the total deficiency of the plaintiff's account equal to $21,248 at the time of his withdrawal.[2] (*Id.*).

The Dental Practice Partnership operated at 1347 Hartford Avenue, Johnston, Rhode Island. Initially Dr. A. and Dr. J. Mansolillo operated a partnership, A&J Realty (Realty Partnership) which owned the building. *(Real Estate Complaint ¶ 4).* At some time in 2000 both Dr. A. and Dr. J. Mansolillo approached Dr. Melfi and asked if he would be interested in purchasing a share of the building. (*Melfi Tr.* at p.4). It was eventually agreed that Dr. Melfi would purchase Dr. A. Mansolillo's interest in the Realty Partnership. (*Id.* at p. 4). In late 2000 the purchase was finalized with a loan to the Realty Partnership from Coastway Credit Union. (*Id.* at p. 5). Dr. Melfi testified that he did not, at the time of purchase, or any time since then, put any personal money into the Realty Partnership. (*Id.* at p 8). Dr. Melfi also testified that the purpose of the Realty Partnership was not to make money but rather, simply to recover sufficient funds from the Dental Practice Partnership in the form of rent in order to cover the mortgage and taxes. (*Id.* at p. 9); *(Plaintiff's Responses to Interrogatories Dated June 25, 2004 (hereinafter "Answers to Interrogatories") responses 2 & 3 (attached as Exhibit G).*

Although there is no written partnership agreement for the Realty Partnership, Dr. Melfi and Dr. J. Mansolillo did execute a Memorandum of Understanding. (*Memorandum of Understanding (attached at Exhibit H)*). That document, dated December 4, 2000 provided that if either of the partners sold their interest during the first five (5) years, the sale price would be limited to one half of the amount of the principal paid off on the mortgage. (*Id.*). Interestingly, Dr. Melfi does not seek

---

[2]The defendants currently have a counterclaim pending against the plaintiff to recover the negative balance of his capital account.

to sell his interest fearing to trigger the provision of this Memorandum. Rather, the Realty Complaint only seeks documents that apparently he has no desire to now inspect.

## III. STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a trial justice may grant summary judgment in favor of a moving party if the justice has determined that there are no genuine issues of material fact. A genuine issue of material fact is one "supported by such evidence that a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." *Hershey v. Donaldson, Lufkin & Jenrette Securities Corp., 317 F.3d 16, 19 (1st Cir. 2003).* The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fed.R.Civ.P. 56©).* The moving party bears the initial burden of showing that there are no genuine issues of material fact for trial. *Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).* Once the moving party has met that burden, the non-moving party then must demonstrate that the trier of fact could reasonably find in the non-moving party's favor with respect to each issue on which that party has the burden of proof at trial. *Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 39 (1st Cir. 2002).* The trial justice must view all evidence and related inferences in the light most favorable to the non-moving party. *Id.*

## IV. ARGUMENT

**A. Defendants Joseph Mansolillo and Arthur Mansolillo are entitled to summary judgment because there is no support for plaintiff Gregg Melfi's claim for any sum of money, since his partnership account was overdrawn and at the time of his withdrawal he actually owed the partnership over $21,000.**

Dr. Melfi cannot establish, as a matter of law, that his withdrawal distribution should exceed the balance of in his capital account, at the time of his wrongful withdrawal from the Dental Practice Partnership. The Uniform Partnership Act ("UPA"), adopted under Rhode Island General Laws, Sections 7-12-12 through 7-12-55, sets out a list of default provisions which govern the actions of a partnership when there is no partnership agreement, as is the situation in this case. Typically, when a partner leaves or withdraws from a partnership, whether pursuant to an agreement or in contravention of an agreement, the partnership is dissolved. R.I.G.L. § 7-12-40. Here, it is undisputed that the plaintiff left the partnership in contravention of the agreement that he had with the defendants. Obviously, Dr. Melfi was to devote his full time and energies to all partnership business. By purchasing his own dental practice and taking patients away from his former partners the plaintiff failed to abide by the agreement, and in fact acted in contravention to it. Under this set of circumstances, the rights of the individual partners are governed by R.I.G.L. §7-12-49(2).

R.I.G.L. §7-12-49 defines the rights of the parties to a partnership when a dissolution is caused in contravention of the agreement among the parties. Specifically R.I.G.L. §7-12-49(2)(b) provides in pertinent part:

> The parties who have not caused the dissolution wrongfully, if they all desire to continue the business in the same name, either by themselves or jointly with others, may do so, during the agreed term for the partnership and for that purpose may possess the partnership property, provided they secure the payment by bond approved by the court, <u>or</u> pay to any partner who has caused the dissolution wrongfully, the value of his or her interest in the partnership at the dissolution, less than damages

> recoverable under subsection (2)(a)(ii) of this section, and in like manner indemnify him or her against all present and future partnership liabilities.

See R.I.G.L. §7-12-49 goes on to provide in subsection (c)(ii) as follows:

> If the business is continued under subsection (2)(b) of this section the right as against his or her co-partners and all claiming through them in respect of their interest in the partnership, to have the value of his or her interest in the partnership, less any damages caused to his or her co-partners by the dissolution, ascertained and paid to him or her in cash, or the payments secured by bond approved by the court, and to be released from all existing liabilities of the partnership; but in ascertaining the value of the partner's interest in the value of the good will of the business shall not be ascertained. (Emphasis added)

The foregoing clearly indicates that the plaintiff cannot make any claim to the going concern value of good will of the partnership assets.[3] Rather, the plaintiff is simply entitled to the return of his capital account. In this case the capital account is a negative number, thus the plaintiff is not entitled to any compensation and in fact the defendants are owed compensation from the plaintiff. Furthermore the defendants are entitled to any damages as a result of the wrongful dissolution. Additionally, any claim the plaintiff may assert over a share of the goodwill value of the company will be ineffective. Under Rhode Island Partnership law, goodwill is not a recognized asset for valuation at the time of distribution. *See* R.I.G.L. §7-12-50(b)(3)(ii).

The accountants for the Dental Practice Partnership kept accounts for each partner, and the defendants correctly relied on that information when they determined that plaintiff was not entitled to any distribution following the dissolution of the partnership. This decision was based upon the fact that the plaintiff had overdrawn his partnership account, taking, in effect, a loan against his interest. Plaintiff was well aware of these facts since he had received all of the financial statements

[3]But see *Anastos v. Sable*, 443 Mass. 146 (2004)(where partner wrongfully withdrawing from partnership was found to be able to recover reduced value of minority interest).

from the accountants on a yearly basis. He knew that his capital account was negative because he had drawn out more money than was available in relationship to the profits that the Dental Practice Partnership had made.

Based upon the relevant law, it is apparent the plaintiff's claim for $200,000 (or any sum) is entirely without foundation. Not only is his application of the law regarding distributions at the time of dissolution incorrect, but he also fails to acknowledge his responsibility to the partnership for the loan he neglected to repay. Consequently, the plaintiff's claim is without merit and the motion for summary judgment should be granted.

**B. Defendants Joseph Mansolillo and Arthur Mansolillo are entitled to summary judgment because Plaintiff Gregg Melfi has failed to state a claim for relief which this Court may grant.**

In the Real Estate Complaint Dr. Melfi has simply asked this Court to issue an "order compelling the Defendant to account to the Plaintiff for all equity in, profits from and monies received, disbursed and retained by the Partnership." (*Real Estate Complaint*) However, Dr. Melfi stated in his deposition that the Realty Partnership was set up solely to recover sufficient funds from the Dental Practice Partnership in order to cover the mortgage. (*Melfi Tr. at p. 9*).It was not created to make a profit according to Dr. Melfi. (*Id.*). In addition Dr. Melfi was given the opportunity to inspect and copy the accounting books, as evidence by the Defendant's response to Request for Production Number 2. *(Defendants Responses to Request for Production (attached as Exhibit I) respons 6 & 9).*

As Dr. Melfi has requested an order from this Court to determine the profits for a

partnership which he admits is not suppose to earn a profit and has previously been given the opportunity to inspect the books yet has failed to follow-up on that opportunity, this Court should grant summary judgment in the favor of the Defendant Dr. J. Mansolillo.

## V. CONCLUSION

For the foregoing reasons the defendants respectfully ask the Court to grant their motion for summary judgment.

Defendant, by His Attorneys,
HIGGINS, CAVANAGH & COONEY, LLP

By Ger C DeMaria

Gerald C. DeMaria, #0637
123 Dyer Street
Providence, RI 02903
(401) 272-3500

## CERTIFICATION

I hereby certify that a copy of the foregoing documents has been furnished by mail, this 19th day of September 2005 to: Francis A. Connor, III and Lawrence T. Gingrow, III at TAYLOR, DUANE, BARTON & GILMAN, LLP, 10 Dorrance Street, Suite 700, Providence, RI 02903 and by regular mail to Everett Petronio, Jr., Esq., Law Offices of Everett A. Petronio, Inc., 1239 Hartford Ave, P.O. box 19040, Johnston, RI 02919-0001

September