UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GREGG MELFI, DDS | ) | |
| | ) | |
| VS. | ) | C.A. 04-80S |
| | ) | |
| ARTHUR MANSOLILLO, DDS, alias<br>JOSEPH MANSOLILLO, DDS, alias | )<br>) | |

**OPPOSITION OF THE PLAINTIFF, GREGG MELFI,**
**<u>TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

The Plaintiff, Gregg Melfi, DDS, opposes the Motion for Summary Judgment filed by the Defendants, Arthur Mansolillo, DDS and Joseph Mansolillio, DDS, and requests that the Court deny the Defendants' motion. As grounds for his opposition, the Plaintiff states that the value of his share in the dental practice at issue is an accounting issue subject to expert review, not a legal issue appropriate for a summary judgment inquiry. Further, the Defendants have incorrectly and falsely argued that the Plaintiff left the dental practice at issue in contravention to the parties' partnership agreement, and accordingly, they have applied Rhode Island statutes that are not applicable to the facts of this case. As further grounds for his opposition, the Plaintiff states that the Defendants incorrectly argue that the Plaintiff has been given complete access to the records of A&J Realty and that he therefore has failed to stated a claim upon which relief can be granted. The grounds for this Opposition are more fully set forth in the attached Memorandum of Law.

WHEREFORE, the Plaintiff, Gregg Melfi, DDS, requests that this Court deny the Defendants' Motion for Summary Judgment.

The Plaintiff,
Gregg Melfi, DDS,
By his Attorneys,

Francis A. Connor, III
R.I. Bar No. 4640
Lawrence T. Gingrow, III
R.I. Bar No. 6541
TAYLOR, DUANE, BARTON & GILMAN, LLP
10 Dorrance Street, Suite 700
Providence, RI 02903
(401) 273-7171
(401) 273-2904 - Fax

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served by hand delivery to Gerald DeMaria, Esq., Higgins, Cavanagh & Cooney, 123 Dyer Street, Providence, RI 02903 and by regular mail to Everett Petronio, Jr., Esq., Law offices of Everett A. Petronio, Inc., 1239 Hartford Avenue, P.O. Box 19040, Johnston, RI 02919-0001.

Lawrence T. Ginrow, III

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GREGG MELFI, DDS | ) | |
| | ) | |
| VS. | ) | C.A. 04-80S |
| | ) | |
| ARTHUR MANSOLILLO, DDS, alias | ) | |
| JOSEPH MANSOLILLO, DDS, alias | ) | |

**MEMORANDUM IN SUPPORT OF THE OPPOSITION OF THE PLAINTIFF, GREGG MELFI, TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, Gregg Melfi, DDS, hereby opposes the motion of the Defendants, Arthur Mansolillo, DDS and Joseph Mansolillo, DDS, for summary judgment. For the reasons set forth below, the Defendants' motion should be denied.

## INTRODUCTION

This case concerns two actions that were originally filed by Dr. Melfi in the Superior Court of Rhode Island, and were then removed to this Court and consolidated. In the first action, Dr. Melfi seeks an Order dissolving and winding up the business affairs of Mansolillo, Mansolillo & Melfi, his dental practice partnership with the Defendants ("the Dental Practice Partnership"). The second action concerns a partnership that Dr. Melfi entered into with Dr. Joseph Mansolillo for the purpose of owning A&J Realty, the real estate where the Dental Practice Partnership operates its business. Because he continues to be a 50% partner in A&J Realty, Dr. Melfi seeks an Order compelling Dr. Mansolillo to fully account for the value of his share of A&J Realty, and to account for all profits from and monies received, disbursed and retained by A&J Realty.

## FACTS

Dr. Melfi started working with the Defendants in August, 1985 after he had graduated from dental school. See Deposition Transcript of Dr. Gregg Melfi, attached as Exhibit A, at page 26. In early 1988, the Defendants proposed that Dr. Melfi become a partner in their practice. See Exhibit A, at page 26. Dr. Arthur Mansolillo had established the value of the practice to be $600,000, and proposed that Dr. Melfi purchase a one third full share ownership. See Exhibit A, at pages 27-28. Dr. Arthur Mansolillo further proposed the Dr. Melfi pay his one third share, $200,000, over a ten year period. See Exhibit A, at page 28. The $200,000 would be paid out in the form of a $400 weekly distribution to the Defendants over the ten year period. See Exhibit A, at page 28; and Answers to Interrogatories of the Defendant, Dr. Arthur Mansolillo, attached as Exhibit B, at page 9. The Defendants received their $400 weekly distribution in the form of a reduced salary to Dr. Melfi. See Exhibit A, at pages 28-31; and Exhibit B, at page 9. In other words, Dr. Melfi received $800 per week in salary, while the Defendants received $1200 per week. See Exhibit A, at page 29-31.

Dr. Arthur Mansolillo admitted in his deposition that, at the time the parties were considering how Dr. Melfi would become a partner in the dental practice, they considered setting up a buy in arrangement for Dr. Melfi under which Dr. Melfi would receive the same $1200 weekly salary as the Defendants. See Deposition Transcript of Dr. Arthur Mansolillo, attached as Exhibit C, at page 28. Dr. Melfi would then pay the Defendants $400 each week to buy in to the practice. See Exhibit C, at page 28. However, instead of implementing this buy in system, the parties decided that Dr. Melfi's buy in would be in the form of a reduced weekly salary. See Exhibit C, at page 28. Dr. Arthur Mansolillo admitted that they decided to use this

reduced salary buy-in arrangement for tax purposes, on the advice of the Dental Practice Partnership's accountant, Joseph Conley. See Exhibit C, at page 28. In other words, the structure of Dr. Melfi's $200,000 buy-in was an accounting mechanism, set up for tax reasons. See Exhibit C, at page 21.

Dr. Melfi's buy-in under this arrangement went into effect in July, 1988. See Exhibit A, at pages 29, 31. Dr. Arthur Mansolillo kept a record of Dr. Melfi's buy-in to the Dental Practice Partnership in a ledger. See Exhibit A, at page 94; Exhibit C, at pages 23 and 24; and Two-Sided Ledger of Dr. Arthur Mansolillo (Exhibit No. 2 to Deposition of Dr. Arthur Mansolillo and Exhibit No. 1 to Deposition of Dr. Joseph Mansolillo), attached as Exhibit D. On the ledger, Dr. Mansolillo carefully checked off when each contribution was made by Dr. Melfi in the form of his reduced salary. See Exhibit D; Exhibit C, at page 24; and Exhibit A, at page 94.

Sometime after this reduced salary agreement went into effect, Joseph Conley recommended that, for tax purposes, the differential between Dr. Melfi's salary and the Defendants' salary be incrementally reduced over the ten year period. See Exhibit A, at pages 35-42. Under this arrangement, Dr. Melfi's salary eventually became equal with the Defendants' salaries in 1996. See Exhibit C, at page 34; Exhibit D. By the time the salaries equaled out, the total difference in salary between what Dr. Melfi received and what the Defendants received was $130,000. See Exhibit A, at page 91. However, as the differential between Dr. Melfi's weekly salary and the Defendants' weekly salary shrank, the Defendants continued to receive other income as part of Dr. Melfi's buy in. See Deposition Transcript of Dr. Joseph Mansolillo, attached as Exhibit E, at pages 30-34; Exhibit A, at pages 90-93. This additional income was in the form of "professional production." See Exhibit E, pages 30-34. In other words, even

though for tax purposes the salaries of all three partners were made equal as of 1996, the Defendants continued to receive additional income to complete Dr. Melfi's ten year buy-in to the Dental Practice Partnership. See Exhibit E, pages 30-34; Exhibit A, at pages 90-93. This additional income that the Defendants received to complete Dr. Melfi's ten year buy-in totaled $70,000. See Exhibit A, at paged 92-93. Ultimately, Dr. Melfi's buy-in amount was $200,000, as was originally planned. See Exhibit A, at pages 42, 92-93. In addition, as part of his buy in, Dr. Melfi paid $20,000 for his share in the partnership's equipment. See Exhibit A, at pages 65-66. This $20,000 contribution by Dr. Melfi was made as part of the reduced salary arrangement discussed above. See Exhibit A, at pages 65-66.

Notably, neither Dr. Melfi nor the Defendants ever signed a written partnership agreement setting forth the terms and conditions of the Dental Practice Partnership. See Exhibit C, at pages 20, 50-51; Exhibit E, at page 40. A written partnership agreement was drafted at the direction of Dr. Arthur Mansolillo, but it was never executed by the partners. See Exhibit A, at pages 47-48, 51. That agreement sets forth only two mechanisms by which a partner would be allowed to leave the Dental Practice Partnership: retirement or death. See Exhibit E, at pages 38-39. Dr. Melfi would not agree to the agreement as drafted and refused to sign it.

In his deposition, Dr. Melfi acknowledged that, generally, members of a partnership require that their partners devote their full time and energy to the partnership. See Exhibit A, at pages 61. However, Dr. Melfi never signed the draft partnership agreement that was proposed by Arthur Mansolillo. See Exhibit C, at pages 20, 50-51; Exhibit E, at page 40. In any event, the "full time and energy" provision of the unsigned written agreement cited by the Defendants

does not specify what partners must and must not do to comply with the terms of the provision. Further, Dr. Melfi never agreed that he would never look at any other employment opportunities. See Exhibit E, at page 47. Moreover, Dr. Melfi never agreed to remain a partner in the Dental Practice Partnership until his retirement or death. As Dr. Arthur Mansolillo admitted in his deposition, the partners "didn't own [Dr. Melfi] . . . . [I]f he wants to leave, we can't hold him here." See Exhibit C, at pages 51-52.

Dr. Melfi considered moving to Massachusetts and purchasing his own dental practice in Massachusetts in 2000. See Exhibit A, at pages 80-81. He advised Dr. Joseph Mansolillo of this possibility at that time. See Exhibit A, at page 81. In late 2001, Dr. Melfi learned of a dental practice for sale that was located in Milton, Massachusetts. See Exhibit A, at pages 85-86. Dr. Melfi advised Dr. Arthur Mansolillo and Dr. Joseph Mansolillo that he was pursing the acquisition of the practice in Milton in January, 2002. See Exhibit A, at page 86. Dr. Melfi closed on the purchase of the practice in Milton in late March, 2002. See Exhibit A, at page 87.

Dr. Melfi's new dental practice in Milton, Massachusetts is approximately 40 miles away from the Dental Practice Partnership's office, which is located in Johnston, Rhode Island. See A&J Realty Complaint, attached as Exhibit F; Exhibit A, at page 86. According to Dr. Arthur Mansolillo, other than Dr. Melfi's family members, all of the patients that Dr. Melfi treated in Johnston continued to seek dental care in the Johnston office after Dr. Melfi left. See Exhibit C, at page 58-59. As for the patients that did not follow Dr. Melfi to Milton, Dr. Melfi assisted in transitioning their dental care to the Defendants. See Exhibit A, at pages 99-100.

According to the 2002 Financial Statement of the Dental Practice Partnership, Dr. Melfi had a negative capital account in the partnership as of December 31, 2002. See

2002 Financial Statement, page 11, attached as Exhibit G. However, a capital account is an accounting mechanism, and the value of Dr. Melfi's share of the partnership is a much larger issue requiring expert testimony and remains an issue very much in this lawsuit.

Dr. Melfi and Dr. Joseph Mansolillo are presently partners in A&J Realty, which owns the property and building in which the Dental Practice Partnership operates. Prior to the time that Dr. Melfi became a partner in A&J Realty, Dr. Arthur Mansolillo and Dr. Joseph Mansolillo were the partners in A&J Realty. See Exhibit E, at pages 6-7. While the Defendants were partners in A&J Realty, A&J Realty's mortgage payments were all paid by the Dental Practice Partnership. See Exhibit E, at pages 7-9. Neither of the Defendants paid any of A&J's mortgage payments with their own personal money. See Exhibit E, at pages 7-9. In 2000, the Defendants and Dr. Melfi decided that Dr. Melfi would replace Dr. Arthur Mansolillo as a partner in A&J Realty. See Exhibit A, at page 4. At this time, the Defendants sold their "interests" in A&J Realty, and Dr. Joseph Mansolillo and Dr. Melfi took out a new mortgage on A&J Realty. See Exhibit C, at pages 10-11. As a result of the sale, the Defendants each received a check for approximately $100,000, even though all of A&J's mortgage payments were paid with Dental Practice Partnership money. See Exhibit E, at pages 7-8.

After the Defendants sold their "interests" in A&J Realty, Dr. Joseph Mansolillo and Dr. Melfi took out a new loan for the purchase of A&J Realty. See Exhibit E, at page 9; Exhibit A, at page 8. Neither Dr. Joseph Mansolillo nor Dr. Melfi paid for the purchase of A&J Realty with any personal money. See Exhibit E, at page 9; Exhibit A, at page 8.

After Dr. Melfi ceased working at the Dental Practice, he sought access to, among other documents, documents and records concerning A&J Realty. Although Dr. Melfi remains a 50% partner in A&J Realty, and is therefore entitled to review all A&J Realty documents and records, the Defendants have repeatedly required Dr. Melfi to particularize the A&J Realty documents that he wishes to review. See Answers to Interrogatories of Joseph Mansolillo, attached as Exhibit H, at page 9 (Answer to Interrogatory 15). Further, Dr. Joseph Mansolillo has advised Dr. Melfi that he will not be allowed to review those financial books and records concerning the time period after Dr. Melfi "wrongfully departed from the Partnership." See Exhibit H, at page 9.

## ARGUMENT

The value of Dr. Melfi's share of the dental practice requires expert analysis and is not an appropriate issue for summary judgment. In addition, in their motion, the Defendants incorrectly argue that Dr. Melfi has a negative capital account in the Dental Practice Partnership, and therefore, he is not entitled to any sum of money reflecting his share of the fair value of the partnership. The Defendants also incorrectly argue that Dr. Melfi has been given complete access to the records of A&J Realty and therefore he has not stated a claim upon which relief can be granted. As set forth below, the Defendants' motion is based upon an entirely erroneous interpretation of the facts and the law. Accordingly, the Defendants' motion should be denied.

### A. SUMMARY JUDGMENT STANDARD.

Summary judgment shall enter for the Defendants only if they demonstrate that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Ordner v. K-H Corp., 74 F. Supp. 2d 150, 151 (D.R.I.

1999). To succeed, the Defendants must show that there is an absence of evidence supporting Dr. Melfi's position. Borschow Hosp. v. Cesar Castillo, 96 F.3d 10, 12 (1st Cir. 1996). In evaluating the Defendants' motion and Dr. Melfi's opposition, the evidence of Dr. Melfi is to be believed, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and " the Court must view all evidence and related inferences in the light most favorable to [Dr. Melfi]." Butler v. McDonald's Corp., 110 F. Supp. 2d 62, 65 (D.R.I. 2000).

### B. THE VALUE OF DR. MELFI'S SHARE IN THE DENTAL PRACTICE PARNTERSHIP IS AN EXPERT DETERMINATION AND IS NOT AN APPROPRIATE MATTER FOR SUMMARY JUDGMENT.

As an initial matter, a capital account is an accounting mechanism. At issue in this lawsuit is whether financial statements showing that Dr. Melfi had a negative capital account accurately record the value of Dr. Melfi's capital contribution to the partnership. Also at issue is, more generally, the extent to which the financial statements account for the value of Dr. Melfi's share in the dental practice partnership.

Certainly, accounting and valuation principles, and how they must be applied to a evaluate a business's profits, losses, assets and equipment depreciation, are not areas within the common knowledge of laypersons. Rather, these determinations necessitate analysis by experts in the fields of accounting and business valuation. Because these accounting and valuation determinations are not within the "common knowledge" category, and expert opinion is required, the value of Dr. Melfi's capital contribution and the value of his share in the practice is not an appropriate subject for summary judgment.

See, e.g., Focus Investment Associates, Inc. v. American Title Insurance Company, 992 F.2d 1231, 1239 (1st Cir. 1993) (a legal malpractice plaintiff must present expert testimony establishing the appropriate standard of care unless the attorney's lack of care and skill is so obvious that the trier of fact can resolve the issue as a matter of common knowledge); Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co., 2003 WL 21087115, *1 (D.Mass.) (Court denied defendant's motion for summary judgment on grounds that the defendant failed to provide expert evidence necessary to determine that it did not infringe upon plaintiff's patent); Chemical Fabrics Corporation v. Textiles Coated, Inc., 1994 WL 259801, *3 (D.N.H.) (Court found that factual issue of the meaning of a term in a patent required expert testimony and could not be resolved by summary judgment); see also Diluglio v. Petrarca, 1994 WL 930970, *5 (R.I. Super.) (the parties to a corporation could not agree on appropriate terms for a buy-out, and the Court found that the issue of the valuation of stock is a complex exercise which "calls for expertise beyond the Court").

### C. THE DEFENDANTS HAVE INCORRECTLY STATED THAT DR. MELFI IS NOT ENTITLED TO ANY SUM OF MONEY DUE TO A NEGATIVE CAPITAL ACCOUNT IN THE DENTAL PRACTICE.

In addition, the Defendants' entire argument regarding the value of Dr. Melfi's share in the Dental Practice Partnership is based on a false premise: that Dr. Melfi left the partnership in contravention of a partnership agreement with the Defendants. On its face, the matter of whether or not Dr. Melfi left the practice in contravention to any

partnership agreement is a disputed issue of material fact, and the Defendants' summary judgment motion should be denied on that basis alone.

1. **<u>Dr. Melfi Did Not Contravene Any Partnership Agreement with the Defendants.</u>**

As the Defendants correctly point out, R.I.G.L. §7-12-49 defines the rights of parties to a partnership when a dissolution is caused in contravention of the agreement among the parties. However, **Dr. Melfi did not contravene any partnership agreement with the Defendants when he left the dental practice.** It is undisputed that the parties never signed a written partnership agreement for the Dental Practice Partnership. In fact, the Defendants emphasize in their motion that there was no partnership agreement, and accordingly, the provisions of R.I.G.L. §7-12-12 through §7-12-59 are applicable to the analysis of this case. Therefore, the Defendants are unable to cite any evidence whatsoever setting forth conditions under which Dr. Melfi would or would not be allowed to voluntarily leave the Dental Practice Partnership. In spite of this, the Defendants appear to somehow believe that Dr. Melfi was locked into servitude within the Dental Practice Partnership until his death or retirement in the distant future.

The only "evidence" the Defendants can offer to support their theory that Dr. Melfi contravened any dental practice agreement is to cite Dr. Melfi's deposition transcript, where Dr. Melfi agreed, generally, that in a partnership, the partners agree to devote their full time and energy to their practice. <u>See</u> Exhibit A, at page 61. The Defendants seem to believe that in agreeing to this vague and self-evident statement, Dr. Melfi has somehow admitted that he was bound to work with the Defendants into

perpetuity. However, the provision of the unsigned partnership agreement from which the defendants take the "full time and energy" language does not specify what a partner must and must not do to comply with its vague language. Most importantly, Dr. Melfi never agreed that he would never look at any other employment opportunities, nor that he would remain a partner in the Dental Practice Partnership until his retirement or death. See Exhibit D, at page 47. Accordingly, the Defendants have failed to demonstrate that Dr. Melfi ever contravened a partnership agreement with the Defendants by pursuing other employment opportunities.

Dr. Melfi's new dental practice is in Milton, Massachusetts, which is approximately 40 miles away from the Dental Practice Partnership's office, which is in Johnston, Rhode Island. See Exhibit F; Exhibit A, at page 86. Since Dr. Melfi started his new practice in Milton, only five (5) of his patients from the Johnston office have chosen to drive the 40 miles to Milton to continue to see Dr. Melfi as their dentist. See Exhibit A, at page 88. As for Dr. Melfi's many other patients, Dr. Melfi assisted in transitioning their dental care to the Defendants. See Exhibit A, at page 99. Accordingly, the Defendants' argument that Dr. Melfi contravened his partnership agreement by allegedly taking patients from the Dental Practice Partnership is utterly ridiculous.

Under R.I.G.L. 7-12-42, dissolution of a partnership is caused "by the express will of any partner **when no definite term or particular undertaking is specified.**" (Emphasis added). In light of the fact that the Dental Practice Partnership had no agreement in place under which Dr. Melfi was forced to remain in the Dental Practice

Partnership, his moving to Milton, Massachusetts to pursue another opportunity in no way contravened any agreement with the Defendants.

2. **The Defendants Incorrectly State that Dr. Melfi is Only Entitled to Receive the Value of His Capital Account Upon Dissolution of the Dental Practice Partnership.**

Because the Defendants have failed to show that Dr. Melfi violated any partnership agreement, their assertion that Dr. Melfi is only entitled to receive the value of his capital account is patently incorrect. The Defendants cite §7-12-49(b)(2) and §7-12-49(b)(3) as the basis for their belief that Dr. Melfi is only entitled to the value of his capital account, and is not entitled to the value of good will in the practice.[1] However, §7-12-49(b) only applies to the dissolution of a partnership when a partner has contravened a partnership agreement.[2] Because Dr. Melfi did not contravene any partnership agreement with the Defendants, §7-12-49(b) does not apply to the facts of this case. As such, the Defendants have incorrectly cited §7-12-49(b) for the proposition that good will is not a proper asset to be recognized at the time of valuation of Dr. Melfi's interest.

Moreover, the Defendants themselves had Dental Practice Partnership appraised in November, 2002, and made Dr. Melfi an offer based on both the appraiser's

[1] The Defendants have incorrectly cited both §7-12-49(c)(ii) and §7-12-50(b)(3)(ii) while actually quoting the language contained in paragraph §7-12-49(b)(3)(ii).

[2] **§7-12-49 Rights of partners to application of partnership property**

...

(b) When dissolution is caused in contravention of the partnership agreement the rights of the partners are as follows:

...

assessment of Dr. Melfi's interest in the practice and a withdrawal settlement prepared by the Dental Practice Partnership's accountant. See Letter from Peter A. Almonte to Everett Petronio, and the attached Withdrawal Settlement, attached as Exhibit I (Exhibit No. 2 to Deposition of Dr. Joseph Mansolillo); see also Exhibit E, at pages 55-56. In spite of Dr. Melfi's negative capital account noted in the withdrawal settlement, the accountant still found that Dr. Melfi's share in the practice was valued at $64,590.33. $15,000 of that amount was the estimated value of Dr. Melfi's intangibles, such as good will. See Exhibit I. The Defendants authorized the appraiser to make a buy-out proposal to Dr. Melfi based on that figure. See Exhibit I. While Dr. Melfi ultimately rejected this buy-out offer as being too low, the fact remains that the Defendants approved a buy-out offer that assessed a value to Dr. Melfi's share of the practice in spite of his capital account. Accordingly, the Defendants' argument that because Dr. Melfi had a negative capital account, he is not entitled to any sum of money for his value in the Dental Practice Partnership is specious and they should be estopped from now making that argument.

Similarly, the value of Dr. Melfi's share in the Dental Practice Partnership as a result of the weekly reduced salary he received in order to become a partner, which is the principle issue in this litigation, is very much in dispute. The Defendants argue in their motion that Dr. Melfi never actually wrote any checks out to the defendants in order to become a partner in the dental practice, and therefore, he never bought in to the dental practice. However, Dr. Arthur Mansolillo admitted in his deposition that, at the time the parties were considering how Dr. Melfi would become a partner in the dental practice,

they considered setting up a buy in arrangement for Dr. Melfi under which he would receive the same $1200 weekly salary as Drs. Arthur and Joseph Mansolillo. See Exhibit C, at page 28. Dr. Melfi would then pay Dr. Joseph Mansolillo and Dr. Arthur Mansolillo $400 each week to buy in to the practice. See Exhibit C, at page 28. However, instead of implementing this buy-in system, the parties decided that Dr. Melfi's buy in would be in the form of a weekly reduced salary. See Exhibit C, at page 28. Dr. Arthur Mansolillo admitted that this reduced salary buy in arrangement was done for tax purposes, on the advice of the practice's accountant, Joseph Conley. See Exhibit C, at page 28. In other words, the structure of Dr. Melfi's buy in was an accounting mechanism, set up for tax reasons. See Exhibit C, at page 21.

In summary, the resolution of the central issue of whether Dr. Melfi is entitled to any sum of money for his share of the Dental Practice Partnership is clearly dependent upon numerous disputed material facts in this action and will absolutely require the input of experts in the field of accounting/professional practice valuations. Accordingly, the Defendants' motion for summary judgment should be denied.

**D. THE PLAINTIFF HAS STATED A PROPER CLAIM FOR RELIEF IN HIS CLAIM PERTAINING TO THE A&J REALTY PARTNERSHIP.**

As stated in his Complaint, Dr. Melfi seeks to compel the Defendant, Joseph Mansolillo, to provide a full accounting of his interest in the partnership. See Exhibit E. As an initial matter, the fact that A&J was not created to make a profit, as the Defendants state in their motion, is irrelevant to the relief sought Dr. Melfi in his Complaint. Rather, whether or not the Defendants have received any profits or other monies received or disbursed by A&J Realty

remains to be seen once Dr. Melfi is granted complete access to all books and records of A&J Realty.

The fact is, Dr. Melfi has not been granted complete access to the books and records of A&J Realty. In response to Dr. Melfi's requests for all documents concerning A&J Realty, which he is entitled as a partner, the Defendants have repeatedly required Dr. Melfi to particularize the A&J Realty documents that he wishes to review. See Exhibit H, at page 9 (Answer to Interrogatory 15). Further, Dr. Joseph Mansolillo has advised Dr. Melfi that he will not be allowed to review those financial books and records concerning the time period after Dr. Melfi "wrongfully departed from the Partnership." See Exhibit H, at page 9.

As set forth above, Dr. Melfi seeks an Order compelling Dr. Joseph Mansolillo to account to him for all equity in, profits from and monies received, disbursed or retained by the A&J Realty. Dr. Melfi has not been granted complete access to the documents and records that he is entitled to review as a partner in A&J Realty. As such, the Defendants have incorrectly stated that Dr. Melfi had failed to state a claim upon which relief may be granted, and their summary judgment motion should be denied.

## CONCLUSION

For the reasons set forth above the Plaintiff, Gregg Melfi, DDS, respectfully requests that the Court deny the Defendants' Motion for Summary Judgment.

Respectfully submitted,

The Plaintiff,
Gregg Melfi, DDS,
By his Attorneys,

Francis A. Connor, III
R.I. Bar No. 4640
Lawrence T. Gingrow, III
R.I. Bar No. 6541
TAYLOR DUANE BARTON & GILMAN, LLP
10 Dorrance Street, Suite 700
Providence, RI 02903
(401) 273-7171/ (401) 273-2904 - fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served by hand delivery to Gerald DeMaria, Esq., Higgins, Cavanagh & Cooney, 123 Dyer Street, Providence, RI 02903 and by regular mail to Everett Petronio, Jr., Esq., Law offices of Everett A. Petronio, Inc., 1239 Hartford Avenue, P.O. Box 19040, Johnston, RI 02919-0001.

Lawrence T. Ginrow, III