UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GREGG MELFI, DDS | ) | |
| | ) | |
| VS. | ) | C.A. 04-80S |
| | ) | |
| ARTHUR MANSOLILLO, DDS, alias | ) | |
| JOSEPH MANSOLILLO, DDS, alias | ) | |

# STATEMENT OF DISPUTED FACTS OF THE PLAINTIFF, GREGG MELFI, DDS, PURSUANT TO L.R. 12.1 IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Gregg Melfi, DDS, submits the following statement of disputed facts pursuant to L.R. 12.1:

1. In early 1988, Dr. Arthur Mansolillo proposed a buy-in arrangement under which Dr. Melfi would become a partner in the dental practice partnership. See Deposition Transcript of Dr. Gregg Melfi, attached as Exhibit A, at pages 26-27.

2. Dr. Arthur Mansolillo established the value of the practice to be $600,000, and proposed that Dr. Melfi purchase a one third full share ownership. See Exhibit A, at pages 27-28.

3. In order for Dr. Melfi to join the dental practice partnership with the Defendants, Dr. Arthur Mansolillo proposed the Dr. Melfi pay $200,000 over a ten year period. See Exhibit A, at page 28.

4. The parties agreed that Dr. Melfi's $200,000 buy-in would be paid in the form of a $400 weekly distribution to the Defendants over the ten year period. See Exhibit A, at page

28; and Answers to Interrogatories of the Defendant, Dr. Arthur Mansolillo, attached as Exhibit B, at page 9.

5. The Defendants received their $400 weekly distribution in the form of a reduced salary to Dr. Melfi. See Exhibit A, at pages 28-31; and Exhibit B, at page 9.

6. Sometime after this reduced salary agreement went into effect, Joseph Conley, the practice's accountant, recommended that, for tax purposes, the differential between Dr. Melfi's salary and the Defendants' salary be incrementally reduced over the ten year period. See Exhibit A, at pages 35-42.

7. After a period of time, the salary differential shrunk such that Dr. Melfi's salary became equal with the Defendants' salaries. At that time, Dr. Melfi had contributed $130,000 in the form of a reduced salary as part of his buy-in to the dental practice partnership. See Exhibit A, at pages 90-93.

8. The Defendants received an additional $70,000 distribution of income to complete Dr. Melfi's ten year buy-in. See Exhibit A, at pages 90-93.

9. Ultimately, the amount Dr. Melfi paid to buy in to the dental practice partnership was $200,000, as was originally planned. See Exhibit A, at page 42, 92-93.

10. While Dr. Melfi agreed to a guaranteed salary that was less than the guaranteed salaries of the Defendants, he did not agree "each year" to a new guaranteed salary. See Exhibit A, at pages 55-57.

11. While the parties agreed to a guaranteed salary arrangement, the arrangement was not agreed to "each year." See Exhibit A, at pages 55-57.

12. Dr. Melfi's initial capital account was established at $20,000, which was part of the reduced salary arrangement under which Dr. Melfi bought into the dental practice partnership. See Exhibit A, at pages 65-66.

13. A written partnership agreement for the dental practice partnership was drafted at the direction of Dr. Arthur Mansolillo, but it was never agreed to or executed by the partners. See Exhibit A, at pages 47-48, 51.

14. Although in his deposition, Dr. Melfi acknowledged that, generally, members of a partnership require that their partners devote their full time and energy to the partnership, Dr. Melfi never stated that he agreed to abide by a provision of the unsigned written partnership agreement that purports to require each partner to devote his full time and energy to the partnership. See Exhibit A, at pages 61; and Deposition Transcript of Dr. Joseph Mansolillo, attached as Exhibit E, at page 47.

15. Dr. Melfi did not agree to the unsigned written partnership agreement as a whole, and he did not selectively object to certain paragraphs of the unsigned written partnership agreement and not object to others. See Exhibit A, at page 58.

16. Dr. Melfi considered moving to Massachusetts and purchasing his own dental practice in Massachusetts in 2000, and he advised Dr. Joseph Mansolillo of this possibility at that time. See Exhibit A, at pages 80-81.

17. Dr. Melfi did not "abandon" the dental practice partnership, but rather, he stopped practicing full time at the offices of the dental practice partnership in March 2002. See Exhibit A, at pages 87, 99-100.

18. Dr. Melfi seeks access to documents and records concerning A&J Realty. Although Dr. Melfi remains a 50% partner in A&J Realty, and is therefore entitled to review all A&J Realty documents and records, the Defendants have repeatedly required Dr. Melfi to particularize the A&J Realty documents that he wishes to review. See Answers to Interrogatories of Joseph Mansolillo, attached as Exhibit H, at page 9 (Answer to Interrogatory 15).

19. Dr. Joseph Mansolillo has advised Dr. Melfi that he will not be allowed to review those financial books and records concerning the time period after Dr. Melfi "wrongfully departed from the Partnership." See Exhibit H, at page 9.

The Plaintiff,
Gregg Melfi, DDS,
By his Attorneys,

Francis A. Connor, III
R.I. Bar No. 4640
Lawrence T. Gingrow, III
R.I. Bar No. 6541
TAYLOR, DUANE, BARTON & GILMAN, LLP
10 Dorrance Street, Suite 700
Providence, RI 02903
(401) 273-7171
(401) 273-2904 - Fax

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served by hand delivery to Lawrence McCarthy, Esq., Higgins, Cavanagh & Cooney, 123 Dyer Street, Providence, RI 02903 and by regular mail to Everett Petronio, Jr., Esq., Law offices of Everett A. Petronio, Inc., 1239 Hartford Avenue, P.O. Box 19040, Johnston, RI 02919-0001.

Lawrence T. Gingrow, III